COUSINS *v.* ROBINSON.

4-4671

Opinion delivered June 7, 1937.

W. L. *Curtis*, for appellant.

*Robert J. White, Ray Blair* and *Arnett & Shaw*, for appellees.

HUMPHREYS, J. Odie Robinson and others brought suit against the Red Glow Coal Corporation in the Northern district of Logan county to recover wages due them for mining coal and to enforce a lien upon the mining leases and equipment owned by the corporation for the payment of same. It was alleged that the wages due them respectively were for mining and producing coal during the months of February and March, 1936; that said corporation was insolvent and was disposing of all its property for the purpose of preventing them from collecting their several claims.

Mrs. C. H. Cousins, wife of C. H. Cousins, filed an intervention in the suit, alleging that on August 1, 1935, said Red Glow Coal Corporation became indebted to her in the sum of $10,000 for which it executed to her five promissory notes in the sum of $2,000 each due in two, three, four, five and six years after date, bearing interest at the rate of eight per cent. per annum, and on the same date executed to her a mortgage on all of its property to secure same, which was filed for record in the office of the circuit clerk of the Northern district of Logan county on August 17, 1935. She alleged that the lien of her mortgage was prior and paramount to that of plaintiffs and prayed for judgment for the amount due her and for a decree of foreclosure of her mortgage.

To the intervention the plaintiffs filed answer, denying that said corporation was indebted to the intervener and alleging that the purported notes and mortgage were without consideration and void.

Joe Anhalt and others brought suit in said court against the Blue Ribbon Corporation and Mrs. C. H. Cousins to recover wages due them for mining coal and to enforce a lien upon the mining leases and equipment owned by the corporation for the payment of same. It was alleged that the wages due them respectively were for mining and producing coal during the months of February and March, 1936; that said corporation was insolvent and was disposing of all of its property for the purpose of preventing them from collecting their several claims.

Mrs. C. H. Cousins filed a separate answer and cross-complaint in this suit, denying the material allegations in the complaint, and alleging that on October 28, 1933, said corporation was indebted to intervener in the sum of $10,000 for money loaned to it, evidenced by five promissory notes for $2,000 each bearing interest at the rate of eight per cent. per annum, which were secured by a mortgage on all of its property, said mortgage being filed and duly recorded in the office of the circuit clerk in the Northern district of Logan county a few days after it was executed. She prayed for judgment and a prior and paramount lien to that of plaintiffs on all of the property owned by said corporation and for a decree of foreclosure and order of sale of said property to satisfy her judgment.

Plaintiffs filed an answer to the cross-complaint denying that said corporation was indebted to Mrs. C. H. Cousins and alleging that the purported notes and mortgage were without consideration and void.

Jewel Mining Company brought a suit in said court against the Blue Ribbon Corporation to recover royalties and rents due it under a lease for $4,165.58, the balance due for coal which had been mined and removed from the land leased and alleged that under the terms of the lease plaintiff was entitled to a lien on the leasehold, machinery, equipment and personal property of every kind located and situated upon the leased premises occupied by the defendant; that the defendant was insolvent and that the mine was about to be flooded with water and that the machinery and equipment were about to be lost; that on

account of the failure to pay rent or royalties plaintiff was entitled to have the lease canceled and to immediate possession of the property under the terms of the lease. Plaintiff prayed for a lien on said machinery and equipment and an order of sale thereof to pay the rents and royalties past due and for a receiver to take charge of the property and preserve it during the pendency of the suit.

The Blue Ribbon Corporation filed an answer denying the material allegations of the complaint.

Mrs. C. H. Cousins filed an intervention in the case, alleging that on October 28, 1933, the Blue Ribbon Corporation was indebted to her in the sum of $10,000 for borrowed money and executed to her five promissory notes in the sum of $2,000 each due and payable respectively on January 1, 1935, January 1, 1936, January 1, 1937, January 1, 1938, and January 1, 1939; and that on the same date it executed to her a mortgage to secure the payment of the notes on all of its property and equipment, which mortgage was filed for record in the circuit clerk's office of the Northern district of Logan county on November 2, 1933; that the notes bore interest at the rate of eight per cent. per annum; that default was made in the payment of the first two notes and that the entire amount of the indebtedness became due on account of the default and that her mortgage lien was prior and paramount to any royalties due plaintiff on account of being recorded before the lease. She prayed for a foreclosure of the mortgage and sale of the property to satisfy her mortgage lien.

Plaintiff filed an answer to the intervention of Mrs. C. H. Cousins denying the material allegations therein and alleging that the notes and mortgage were without consideration and void; and prayed for a dismissal of the intervention for the want of equity.

The three cases were consolidated for the purposes of trial and, after hearing the evidence adduced by the parties, the court dismissed the answers, cross-complaint and interventions of Mrs. C. H. Cousins for the want of equity, from which is this appeal.

The record in this case is voluminous and it could serve no use as a precedent to set out the evidence of the various witnesses. Suffice it to say that we have read the evidence very carefully and according to a preponderance thereof we have concluded that Mrs. C. H. Cousins never loaned either corporation any money and that the notes and mortgages were taken in her name, by her husband, without her knowledge, and that the mortgages were recorded by him as a protection to the corporation against damage suits and other suits that might be brought against them. These corporations and other mining corporations were organized by C. H. Cousins and his relatives and employees became stockholders, directors and officers in them, none of whom paid anything for their stock, and all of whom were subject to his will and control. He absolutely dominated the corporations, their business operations and took charge of all the coal produced by them, sold same, and sent each corporation enough out of the proceeds to pay the respective pay rolls and other expenses of operations irrespective of the amount of coal each shipped him, and continued to do this as long as the Blue Ribbon Corporation and Red Glow Coal Corporation operated their respective mines. About the time these corporations began business he told the officers of each corporation to execute notes and mortgages to his wife in the sum of $10,000, when none of the officers or directors of the corporations knew anything about either one of them being indebted to her. It does not appear when and where she got the $20,000 to loan them and the $10,000 additional to lend the Queen Excelsior Corporation, which was another of Cousin's corporations. It does not appear that she ever turned any of her individual money over to him to invest. C. H. Cousins contents himself with saying that he attended to his wife's affairs for many years, beginning in 1914, and as her agent, loaned these three corporations $30,000 of her money. She testified that her husband, C. H. Cousins, attended to her affairs beginning in 1914 and that she trusted him implicitly, but received no information from him that he had loaned $30,000 of her money to these three corporations, or that he had taken mortgages from

them on their property to secure the payment of said amounts. It appears to us from the meager statement made by both that if she ever had any money she turned it over to him to use as he pleased and without any intention of ever requiring him to account to her for it. He stated to the officers when these corporations were organized that mortgages should be executed to his wife as a matter of protection to them. It is rather significant that each mortgage was for the same amount and that each was large enough to render some protection to the corporation against any suits that might be brought against them in the operation of the mine.

It would be quite a different case if Mrs. Cousins had shown that she had $30,000 of her own money and that she had turned it over to her husband for investment and had required him to make reports to her as to the investments he made and the securities he had taken. She admitted as stated above that she did not know anything about the notes or mortgages. This record also reflects that the money he let these corporations have came largely from other sources and not from his wife.

No error appearing, the decree dismissing intervener's answers, cross-complaint and interventions for the want of equity is affirmed.